**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**In re**
**LOUIS J. PEARLMAN, et al.,**

    **Debtor.**

_____

**BANK OF AMERICA, N.A.,**

    **Appellant,**

**-vs-**                                        **Case No. 6:11-cv-7-Orl-28DAB**
                                                **Bankr. Ct. Case No. 6:07-bk-761-KSJ**
                                                  **Adv. Proc. No. 6:09-ap-715-KSJ**

**SONEET R. KAPILA, as Chapter 11**
**Trustee for Trans Continental Airlines,**
**Inc., Trans Continental Records, Inc.,**
**and Louis J. Pearlman Enterprises, Inc.,**

    **Appellee.**
_____/

# ORDER

Bank of America, N.A. ("Appellant") challenges the denial by the bankruptcy court of a motion to dismiss fraudulent transfer claims brought by the Chapter 11 Trustee, appellee Soneet Kapila ("the Trustee"), in adversary proceedings relating to the bankruptcy estates of Louis J. Pearlman ("Pearlman") and several of Pearlman's companies. The transfers at issue are payments made by Pearlman entities to Appellant and other banks to repay loans during the time period that Pearlman was operating Ponzi schemes—crimes for which he has been sentenced to twenty-five years in federal prison.[1]  As set forth below, the

---

[1] In June 2007, Pearlman was indicted by a federal grand jury, and, shortly after a superseding information was filed in March 2008, Pearlman pleaded guilty to all four counts

bankruptcy court's ruling is affirmed.

## I. Jurisdiction and Standard of Review

"The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges . . . ." 28 U.S.C. § 158(a). The orders at issue here are interlocutory, and leave to appeal them was granted on March 9, 2011. (Doc. 14).

The bankruptcy's court's decision on the motion to dismiss turned on a question of law and is therefore to be reviewed de novo. See, e.g., Schlein v. Mills (In re Schlein), 8 F.3d 745, 747 (11th Cir. 1993). Under de novo review, an appellate court "'freely examines the applicable principles of law to see if they were properly applied.'" Club Assocs. v. Consol. Capital Realty Investors (In re Club Assocs.), 951 F.2d 1223, 1228-29 (11th Cir. 1992) (quoting Southtrust Bank of Ala., N.A. v. Thomas (In re Thomas), 883 F.2d 991, 994 (11th Cir. 1989)).

## II. Background

In the jointly administered bankruptcy cases of Pearlman and his companies,[2] the Trustee has filed more than 700 adversary proceedings to attempt to recover allegedly fraudulent transfers. The Trustee has asserted actual fraudulent transfer claims under 11

---

against him—two counts of conspiracy to commit an offense against the United States; one count of money laundering; and one count of presenting or using a false claim in a bankruptcy proceeding.

[2]In March 2007, creditors filed involuntary Chapter 11 bankruptcy petitions against Pearlman and two of his companies—Trans Continental Airlines, Inc., and Trans Continental Records, Inc. The next month, a Receiver for another Pearlman business, Louis J. Pearlman Enterprises, Inc. ("LJPE"), filed a voluntary Chapter 11 petition on LJPE's behalf.

U.S.C. § 548(a)(1)(A) as well as constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B).[3]  On April 16, 2010, the bankruptcy court entered a Bank Test Case Order ("BTCO") (B.R. 2953)[4] that established two test cases to help resolve many of the adversary proceedings involving banks that had loaned money to the Pearlman entities and received repayments on those loans.  Test Case No. 1, which involves the Trustee's claims of actual fraudulent transfers under § 548(a)(1)(A), is the case involved in this appeal.[5]

In the BTCO, the parties also made several stipulations solely for the purpose of prosecuting and defending a motion to dismiss the actual fraudulent transfer claims.  The parties agreed that those stipulations and the exhibits attached to the BTCO "shall be deemed a part of and incorporated by reference into[] the complaints in the [adversary proceedings]." (BTCO at 6).  The stipulations are:  (1) that "[t]he factual bases for the actual fraudulent transfer causes of action alleged in the complaints filed in the [adversary proceedings] are not based upon the 'badges of fraud' set forth in In re XYZ Options, Inc.,

---

[3] The Trustee also brought analogous claims under Florida law and 11 U.S.C. § 544(b).

[4] Citations to the record in the main bankruptcy proceeding—Case No. 07-bk-761—are denoted in this Order by "B.R."; citations to the record in Adversary Proceeding No. 09-ap-715 are denoted by "Adv. Proc. Doc."; and citations to the record in this Court are indicated by "Doc."

[5] Pursuant to the BTCO, the banks in the "Bank Joint Defense Group" selected Integra Bank ("Integra") as the lead bank for litigation purposes, and thus the adversary proceeding against Integra became the lead adversary proceeding for test case litigation.  However, after this appeal was filed, the Federal Deposit Insurance Corporation was appointed as receiver for Integra and was substituted as a party in place of Integra.  (See Docs. 36 & 39).  Upon motion of the members of the Bank Joint Defense Group, Bank of America, N.A. was then substituted as the representative to prosecute this appeal.  (See Docs. 37 & 39).  Consequently, Bank of America, N.A. is now the named Appellant herein.

-3-

154 F.3d 1262 (11th Cir. 1998)"; (2) that "to the extent that the transfers sought to be avoided . . . were in repayment of loans made by the defendants in the [adversary proceedings] to one or more of the Debtors, then the 'for value' component of Section 548(c) of the Bankruptcy Code, and corresponding provision of Florida law, is and will be deemed satisfied"; and (3) that "[t]he defendants named in the [adversary proceedings] had no actual knowledge of the Debtors' fraudulent schemes described in Pearlman's plea agreement . . . and/or the complaints filed in the [adversary proceedings]."  (BTCO at 6-7).

The First Amended Complaint ("FAC") that is at issue here (Adv. Proc. Doc. 4) describes three schemes operated by Pearlman and others: two Ponzi schemes—"the EISA Program" and "the TCTS Stock Program"—and a bank fraud scheme that is not characterized therein as a Ponzi scheme.  The bank fraud scheme is described as a scheme in which Pearlman made misrepresentations and submitted false financial materials to obtain loans from banks.  Transfers from one of Pearlman's companies to the defendant bank—listed by amount and date in an attachment—are alleged to have been made with actual intent to hinder, delay, or defraud the company's present and future creditors.  (FAC ¶¶ 70, 79).

In its motion to dismiss (Adv. Proc. Doc. 5), the bank argued that, having disclaimed reliance on "badges of fraud" in the BTCO, the Trustee is attempting to rely on the judicially-created "Ponzi scheme presumption" to support his actual fraud claims.  The bank contended that the Ponzi scheme presumption does not apply to the repayment of bank loans involved here and that therefore the actual fraudulent transfer claims fail as a matter of law.  The bank also argued that the allegations of the FAC showed that the bank had

acted in good faith and that the claims are thus not viable.

The bankruptcy court denied the motion to dismiss in a Memorandum Opinion (Adv. Proc. Doc. 29) and Order (Adv. Proc. Doc. 30). In its Memorandum Opinion, the court noted that "[a]lthough the amended complaint does not use the phrase 'Ponzi scheme presumption,' the Bank Test Case Order and the parties' briefs make clear that the trustee's amended complaint relies solely on the presumption to establish the Pearlman Entities' transfers to [the bank] were made with actual intent to defraud its other creditors." (Mem. Op. at 6 n.21).[6] The bankruptcy court concluded that the bank fraud scheme is not a Ponzi scheme but that nevertheless the FAC "contains enough allegations to make plausible that the loan repayments were 'in furtherance of' either the EISA Program or the TCTS Stock Program, which both are undisputedly Ponzi schemes." (Id. at 7).

---

[6]It is not plain from the BTCO that the parties stipulated that the Trustee was relying only on the Ponzi scheme presumption to establish actual intent to defraud. The Ponzi scheme presumption appears to have been brought up by the banks in the motion to dismiss. (See Mot. to Dismiss, Adv. Proc. Doc. 5, at 18 (noting that the parties had stipulated in the BTCO that "badges of fraud" were not being relied upon and that "[i]nstead, the Trustee evidently plans to rely entirely upon the so-called 'Ponzi scheme presumption'")). It apparently became the parties' focus thereafter.

The banks seem to take the position that actual intent may be established in only one of two ways: by using "badges of fraud" or by invoking the Ponzi scheme presumption. However, actual intent may be shown through other evidence—for example, a plea agreement. Cf. Christian Bros. High Sch. Endowment v. Bayou No Leverage Fund, LLC (In re Bayou Group, LLC), 439 B.R. 284, 307 (S.D.N.Y. 2010) (noting, in reviewing bankruptcy court's summary judgment order, that "[e]ven if the Ponzi scheme presumption were not applicable, the guilty pleas of the Bayou principals combined with [an expert report] . . . provide[d] overwhelming evidence of actual fraudulent intent"). In the instant case, there is at least a plea agreement in existence already. Nevertheless, because the parties and the bankruptcy court focused on the issue of the potential application of the Ponzi scheme presumption to the circumstances of this case, this Court will confine its analysis to that question with regard to the matter of actual intent.

In finding the actual fraudulent transfer claims sufficiently stated, the court relied on a portion of Pearlman's plea agreement—attached to the BTCO and incorporated by reference into the FAC—that explains that Pearlman made "misrepresentations to get money from the [banks]. Pearlman did that because he had tremendous demands for cash from EISA investors and prior loans made by federally insured financial institutions. In sum, Pearlman ran his bank fraud scheme as another Ponzi scheme where he would use the financing that he obtained to make payments on other bank loans or to investors who were victims of his other Ponzi scheme. . . ." (Id. (alteration in original)). The court concluded that there was a fair inference "that Pearlman used the bank loans to perpetuate his ongoing Ponzi schemes" and that it is "at least plausible that Pearlman's loan repayments to [the bank] kept credit flowing and stabilized Pearlman's fraudulent house of cards perhaps a bit longer." (Id.).

The bankruptcy court also pointed out that "[g]oing forward, the trustee must establish his allegations beyond mere plausibility. He bears the burden of persuasion to establish that the loan repayments to [the bank] were in fact made in furtherance of either the EISA Program or the TCTS Stock Program." (Id. at 8). The court noted that even if the Trustee is able to show at a later stage of the case that the Ponzi scheme presumption applies, the payments still might not be avoidable transfers because the issue of the transferee's good or bad faith still remains. (Id.). The bankruptcy court found that the merits of the bank's affirmative defense of good faith could not be decided on the motion to dismiss because good faith is a fact-intensive inquiry that could not be determined from the face of the FAC. (Id. at 9).

On appeal, Appellant challenges both of these rulings. Appellant contends that the bankruptcy court erred in allowing use of the Ponzi scheme presumption in the context of this case, and Appellant also argues that even if the Ponzi scheme presumption is an available manner of pleading the actual fraudulent transfer claims, the FAC does not plead "in furtherance of" a Ponzi scheme and must be amended. Additionally, Appellant maintains that good faith is apparent from the face of the FAC and also warrants dismissal of the claims.

### III.  Discussion

Section 548(a)(1)(A) of the Bankruptcy Code provides that "[t]he trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted." 11 U.S.C. § 548(a)(1)(A). As courts often reiterate, in fraudulent transfer actions "[t]he focus in the inquiry into actual intent is on the state of mind of the debtor," and "[c]ulpability on the part of the . . . transferees is not essential." Plotkin v. Pomona Valley Imps., Inc. (In re Cohen), 199 B.R. 709, 716-17 (B.A.P. 9th Cir. 1996). Moreover, "[t]he avoidance of a transfer as fraudulent does not necessarily lead to a remedy against transferees. The fraudulent transfer statutes provide carefully crafted remedies and limitations on remedies. Not every transferee is liable. Subsequent good faith transferees often have no liability." Id. at 716.

"With respect to Ponzi schemes, transfers made in furtherance of the scheme are presumed to have been made with the intent to defraud for purposes of recovering the payments under" § 548(a)(1)(A).  Perkins v. Haines, 661 F.3d 623, 626 (11th Cir. 2011). This is the so-called "Ponzi scheme presumption" on which the parties have focused in this case.  Appellant asks this Court to make a ruling that the Ponzi scheme presumption does not and cannot apply outside of transfers to either Ponzi scheme investors or brokers, arguing that it and the other banks are "innocent ordinary creditors" and that the Trustee should not be allowed to use the presumption to satisfy the actual intent element of a § 548(a)(1)(A) claim.  The Court declines this invitation.

At the motion-to-dismiss stage of a case, the issue is whether plausible claims of actually fraudulent transfers have been pleaded—not whether the claims have merit.  The facts set forth in the FAC and the Pearlman plea agreement constitute "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" and to survive the motion to dismiss.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[7]

---

[7]Ashcroft and Twombly discuss the pleading standards of Federal Rule of Civil Procedure 8, which applies in bankruptcy adversary proceedings pursuant to Bankruptcy Rule 7008(a).  Appellant has not argued with any vigor that the particularity requirement of Federal Rule of Civil Procedure 9(b) is the problem with the FAC, and the bankruptcy court did not discuss Rule 9(b) in its orders; instead, the focus has been on plausibility and the specific issue of the potential applicability *vel non* of the Ponzi scheme presumption. (See, e.g., Reply in Support of Test Case No. 1 Mot. to Dismiss, Adv. Proc. Doc. 13, at 4-5 (stating that the Trustee's discussion of Twombly in his response "has little if anything to do with the Test Case No. 1 Motion, which is not directed to the inadequacy of the Trustee's pleadings generally" and assuming arguendo that the Trustee's pleading obligations are governed by the notice pleading requirements of Rule 8)).

Rule 9(b), which is generally applicable to bankruptcy adversary proceedings

As noted by the bankruptcy court, the Trustee will have to establish at a later stage of the case that the transfers at issue were in fact made in furtherance of a Ponzi scheme before he can rely on the Ponzi scheme presumption as a means of establishing actual intent to defraud by the transferor—Pearlman. But, this Court finds no error in the bankruptcy court's conclusion that based on what is known of Pearlman's actions—as described in the FAC and in Pearlman's plea agreement, which was incorporated as part thereof—it is plausible that the loan repayments to the Defendant banks were in furtherance of one or both of Pearlman's acknowledged Ponzi schemes. The fact that the bank fraud scheme was not itself a Ponzi scheme does not bar potential use of the presumption; the pertinent inquiry is whether the payments at issue were plausibly in furtherance of a Ponzi scheme.

---

pursuant to Bankruptcy Rule 7009, requires particularity in the pleading of fraud, but courts have reached differing conclusions as to whether fraudulent transfer claims—in the bankruptcy context or under state law—must be pleaded in conformity with Rule 9(b). Compare, e.g., Luria v. Blue Cross Blue Shield of Ga., Inc. (In re Taylor, Bean & Whitaker Mtge. Corp.), No. 3:09-bk-7047-JAF, Adv. No. 3:11-ap-960-JAF, 2012 WL 2369342, at *2 (Bankr. M.D. Fla. Mar. 22, 2012) ("A claim asserting an actual fraudulent transfer under section 548 must satisfy the particularity requirement of Rule 9(b)." (quotation and citation omitted)), with Gulf Coast Produce, Inc. v. Am. Growers, Inc., No. 07-80633-CIV, 2008 WL 660100, at *6 (S.D. Fla. Mar. 7, 2008) (concluding "that the heightened pleading standard of Rule 9(b) does not apply to claims brought under the" Florida Uniform Fraudulent Transfer Act"). Some of the policy reasons for Rule 9(b)'s particularity requirement certainly are lessened in fraudulent transfer claims, where the defendant transferee is not the party accused of fraud. Moreover, even courts that find Rule 9(b) applicable often "relax" the 9(b) requirements where fraudulent transfer claims are brought by "outsiders"—such as bankruptcy trustees—who have limited information regarding fraud. See, e.g., In re Taylor, Bean & Whitaker, 2012 WL 2369342, at *2. Even assuming that Rule 9(b) applies here, under the circumstances of this case the same facts that constitute the sufficient factual matter to state plausible claims of actually fraudulent transfers—the descriptions of the schemes in the FAC and the incorporated plea agreement—also serve to "state with particularity the circumstances constituting fraud" as required by Rule 9(b).

The "innocent ordinary creditor" argument of Appellant goes not to the issue of Pearlman's fraudulent intent but to the question of the banks' good faith, which is an affirmative defense provided for by 11 U.S.C. § 548(c)[8] and which need not be overcome by the allegations of a fraudulent transfer complaint.[9] In its second issue on appeal, Appellant contends that the applicability of the good faith defense can in this case be determined from the FAC. This argument is rejected.

The stipulations entered into by the parties in the BTCO that the "for value" component of § 548(c) and that the banks had no actual knowledge of Pearlman's fraudulent schemes do not establish the good faith defense as a matter of law. As noted in the Memorandum Opinion, even with these stipulations the issue of the banks' "imputed knowledge" remains. The applicability of the defense is not otherwise apparent from the face of the FAC either; instead, as correctly stated by the bankruptcy court, its applicability is a fact-intensive inquiry for a later stage of the case if necessary.

## IV. Conclusion

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** that the

---

[8]Section 548(c) provides in pertinent part that "a transferee or obligee of . . . a transfer or obligation that takes for value and in good faith has a lien on or may retain any interest transferred or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation."

[9]See, e.g., Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (in re Bayou Group, LLC), 362 B.R. 624, 631 (Bankr. S.D.N.Y. 2007) ("It bears repeating on these motions [to dismiss] that the plaintiff in a Section 548(a)(1)(A) claim does not have the burden to allege and prove that the defendant-transferee did not give value for or act in good faith in receiving the transfer.").

Memorandum Opinion (Adv. Proc. Doc. 29) and Order (Adv. Proc. Doc. 30) of the bankruptcy court are **AFFIRMED.** The Clerk is directed to enter a judgment to this effect and thereafter to close the file.

**DONE** and **ORDERED** in Orlando, Florida this 7th day of September, 2012.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record